# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 01-1062

_____

United States of America,　　　　　　\*
　　　　　　　　　　　　　　　　　　\*
　　　　　　　　Appellee,　　　　　　\*
　　　　　　　　　　　　　　　　　　\*　　Appeal from the United States
　　　　v.　　　　　　　　　　　　　\*　　District Court for the
　　　　　　　　　　　　　　　　　　\*　　Western District of Missouri.
Larry Beal,　　　　　　　　　　　　\*
　　　　　　　　　　　　　　　　　　\*
　　　　　　　　Appellant.　　　　　\*


_____

Submitted:  December 10, 2001
Filed:  February 1, 2002

_____

Before McMILLIAN and HANSEN, Circuit Judges, and BATTEY[1]

_____

HANSEN, Circuit Judge.

　　　Larry Beal appeals his drug-related convictions and sentence.  We affirm the judgment of the district court.[2]

_____

　　　[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota, sitting by designation.

　　　[2]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

## I.

On September 1, 1999, the grand jury indicted Beal, Joseph Johnson, Eugene Johnson, Anthony Clemons, and Macia Jackson in a nine-count drug conspiracy indictment. Specifically, the indictment charged Beal with one count of conspiracy to distribute cocaine and cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1); two counts of distributing cocaine base, one count of distributing cocaine, and one count of possession with intent to distribute cocaine base, all in violation of 21 U.S.C. §841(a)(1); and one count of being a convicted felon in possession of a firearm in and affecting commerce, in violation of 18 U.S.C.§§ 922(g)(1), 924(a)(2). Beal and Johnson proceeded to trial by jury together, and the counts against the remaining defendants were separately resolved.[3] We summarize the evidence presented at trial in the light most favorable to the jury's verdict.

In May of 1997, the Drug Enforcement Administration (DEA) and the Springfield Missouri Police Department began receiving intelligence information regarding Larry Beal's involvement in cocaine trafficking. Beal proved to be the "head leader" (Trial Tr. at 475) or "mastermind" (Id. at 74) of a cocaine distribution conspiracy in the Springfield area. Beal and his associates distributed cocaine in powder form and sometimes processed it into cocaine base for distribution. Documentary evidence indicates that Beal obtained six different pager units for himself and other members of the conspiracy and rented automobiles for trips to St. Louis, where he would obtain his drug supply.

Beal and Johnson often distributed drugs to coemployees and others at Hudson Foods (now Willowbrook Foods) in Springfield, where Beal worked as a supervisor

---

[3]Eugene Johnson and Anthony Clemons pleaded guilty, and the government dismissed the charges against Macia Jackson in favor of allowing her to face state charges.

and Johnson worked as a mid-level supervisor under Beal. If a coworker owed Beal money for drugs, Beal would often keep the coworker's paycheck, accompany that person to the bank, and collect payment as soon as the person cashed the check. Beal also owned a sports-related hat shop in Springfield, and coconspirators indicated that Beal made numerous trips in rental cars to St. Louis for the purpose of obtaining cocaine as well as merchandise for his shop.

Codefendant Anthony Clemons testified at trial that he had been involved in the conspiracy from September 1997 until his arrest in late December 1997. He worked at Hudson Foods with Beal and Johnson and often observed them distributing cocaine or cocaine base at work. Clemons began distributing drugs for Beal. Beal introduced Clemons to clients, provided Clemons with a pager so drug clientele could contact him, and supplied the cocaine. Beal set the price and Clemons would remit payment after he sold the drugs. Beal told Clemons to go to Johnson to obtain drugs or to ask questions when Beal himself was unavailable, and Clemons sometimes picked up his supply at Beal's retail store or from Johnson. In exchange for Clemons' drug-dealing activities, Beal supplied him with personal-use amounts of cocaine base which Clemons could either use or resell. Clemons made one trip to St. Louis with Beal. Beal obtained cocaine from his supplier there and delivered a portion of it to Clemons the next day.

Tommy Dorsey also worked at Hudson Foods with Beal. Dorsey began obtaining personal-use amounts from Beal after he was released from a prison work program, and shortly thereafter, he began distributing cocaine and cocaine base for Beal. In February 1997, Dorsey accompanied Beal and Beal's girlfriend, Macia Jackson, to St. Louis where Beal obtained cocaine from his supplier and merchandise to stock his store.

Officers conducted three controlled purchases of cocaine and cocaine base from Beal during the course of the conspiracy. In November 1997, officers observed

3

Beal distribute 1.3 grams of cocaine base to Dorsey, who began working as a government informant following his own arrest. In April 1999, officers observed Beal distribute 2.0 grams of powder cocaine to Tony Booker, who was working as a government informant. And on August 19, 1999, officers observed Beal distribute .13 grams of cocaine base to Dorsey during another controlled purchase.

DEA officers and the Springfield Police Department's Special Response Team executed a federal search warrant at Beal's residence on August 20, 1999. They seized personal-use amounts of marijuana, over $1,300 in cash, digital scales, a Ruger .45 caliber semi-automatic handgun, and an ammunition clip with seven rounds of .45 caliber ammunition. Beal arrived home while the officers were executing the search warrant. The officers took Beal into custody, searched him, and seized six individual packages of cocaine base discovered on his person.

The jury convicted Beal on all counts against him. Prior to sentencing, the United States Supreme Court decided Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), in which the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Because the jury made no drug quantity determination, the government conceded that a life sentence under 21 U.S.C. § 841(b)(1)(A) was unavailable. Thus, the district court sentenced Beal to thirty years of imprisonment, which is the statutory maximum sentence without regard to drug quantity under 21 U.S.C. § 841(b)(1)(C) for defendants, like Beal, who have a prior felony drug conviction. Beal now appeals.

II.

Beal asserts that the district court erred in admitting an audio tape from the April 1999 controlled buy between Beal and Booker. Beal contends that the introduction of this tape violated his Sixth Amendment right to confront the witnesses

against him because the tape was admitted in spite of the fact that Booker was unavailable to testify at trial.

We review a district court's decision to admit evidence over a hearsay objection under an abuse of discretion standard. United States v. Wadena, 152 F.3d 831, 854 (8th Cir. 1998), cert. denied, 526 U.S. 1050 (1999). We review de novo the district court's decision that admitting the evidence did not violate Beal's Sixth Amendment rights. Id. These issues are intertwined. In order to satisfy the Confrontation Clause, the out-of-court statement of one who is unavailable to testify at trial must bear the indicia of reliability, such as falling within a firmly rooted hearsay exception. Ohio v. Roberts, 448 U.S. 56, 66 (1980). The "'hearsay rules and the Confrontation Clause are generally designed to protect similar values.'" Id. (quoting California v. Green, 399 U.S. 149, 155 (1970)). If a firmly rooted hearsay exception does not apply, the evidence is still admissible if it demonstrates "particularized guarantees of trustworthiness." Idaho v. Wright, 497 U.S. 805, 815 (1990) (quoting Roberts, 448 U.S. at 66). However, "hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." Id. at 822.

Beal complains generally that the audiotape should not have been admitted without Booker's testimony at trial. Beal, however, has failed to make the tape available to us on appeal and has not provided this court with any transcript of the recorded conversation. He asserts vaguely that "the statement" must be shown to be trustworthy from the totality of the circumstances but has not met his burden even to demonstrate what statement he complains of. The officer who monitored and recorded the conversation during the controlled buy indicated that the taped conversation was indiscernible because of the loud music in the car, and Beal offers nothing to the contrary. If the conversation could not be understood, the contents of the tape could not have added much to the prosecution's case. Because the defendant has failed to specify any particular hearsay statement to which he objects and has not

5

produced the tape or even a transcript of its contents, we are unable to test whether or not the taped statements fall within a recognized hearsay exception or are otherwise sufficiently trustworthy and reliable. See United States v. Jorgensen, 144 F.3d 550, 562 (8th Cir. 1998) (noting that it is not "our responsibility to dig through 20 volumes of trial transcript to ferret out and examine" hearsay statements not specified by record references). For these reasons, we cannot conclude that the district court abused its discretion in admitting the audiotape.

Beal also argues that the cocaine from the April 1999 controlled buy was inadmissible because the government failed to establish a proper chain of custody to authenticate it. Beal asserts that because Booker did not testify and the officers did not conduct a body cavity search of Booker prior to the buy, the chain of custody is faulty. Specifically, Beal argues that Booker could have had the cocaine in his own body cavity and not received it from Beal.

We review a district court's decision to admit evidence under a clear abuse of discretion standard. United States v. Pazzanese, 982 F.2d 251, 252 (8th Cir. 1992). The admission of evidence is proper if the court "is satisfied that in reasonable probability the evidence has not been changed." Id. We presume that the government has preserved the integrity of the evidence "unless there is a showing of bad faith, ill will, or proof that the evidence has been tampered with." Id. (internal quotations omitted).

The officers testified that they searched Booker's person prior to the controlled buy, though they did not conduct a body cavity search. The officers further testified that the transaction occurred in Beal's car on a public street, that it was monitored by audiotape, and that it lasted less than one minute. Most notably, Booker was under constant surveillance by several officers who communicated by radio to ensure that their surveillance was not compromised. The officers testified, for instance, that they were positioned such that when one lost sight of Booker, another could see him. The

6

government further demonstrated that the cocaine went from Booker to Officer Troy Smith (who had searched Booker before the buy and provided money for the purchase) to Officer Randy McDowell, who forwarded it to the DEA laboratory where it was received and analyzed by Khrishna James. Both James and McDowell testified that the substance was in substantially the same condition as when they originally received it.

We find no clear abuse of discretion in the district court's decision to admit this evidence. While the officers monitoring the controlled buy may not have been able to see the actual transaction occur within the car, the otherwise complete surveillance supports the conclusion that, within a reasonable probability, Booker had no opportunity to retrieve the evidence from a body cavity or to change or tamper with the evidence.

Finally, Beal contends that his 30-year sentence on the drug counts must be reversed under the principles announced by the Supreme Court in Apprendi v. New Jersey, 530 U.S. 466 (2000). Prior to trial, the government filed an information pursuant to 21 U.S.C. § 851, providing Beal with notice of the government's intent to seek an enhanced punishment of life imprisonment under 21 U.S.C. § 841(b)(1)(A), based upon Beal's prior felony drug convictions and the specific amount of drugs involved in his offense. Because the jury made no finding as to drug quantity, the district court sentenced Beal to 30 years, within the limits provided in § 841(b)(1)(C). This provision sets the statutory maximum sentence at 20 years without regard to drug quantity but also provides for a 30-year maximum sentence for a defendant who has a prior felony drug conviction. Beal asserts that the district court erred by effectively amending the indictment when it sentenced him under § 841(b)(1)(C) rather than under the government's notice of life imprisonment under § 841(b)(1)(A). He asserts that the only proper outcome in this case would have been a conviction by a jury of the specific drug quantity alleged in the notice or, because the jury made no finding as to drug quantity in this case, an acquittal.

7

We find no error. The Supreme Court's jurisprudence permits the consideration of the fact of a prior conviction when determining the proper sentence. See Apprendi, 530 U.S. at 490; Almendarez-Torres v. United States, 523 U.S. 224, 235 (1998) (holding that the fact of a prior conviction is not an element of the offense). Additionally, we have previously concluded that the district court does not err under the rule of Apprendi by sentencing a defendant with a prior drug felony conviction to the enhanced statutory maximum sentence provided in § 841(b)(1)(C), so long as the government had filed a motion pursuant to § 851 giving the defendant notice of the government's intent to enhance the sentence on the basis of a prior felony conviction. See United States v. Maynie, 257 F.3d 908, 919 (8th Cir. 2001) (stating that where the defendant had at least one prior drug felony conviction, the district court could have imposed the maximum sentence of 30 years without violating Apprendi); United States v. Arias, 252 F.3d 973, 979 (8th Cir. 2001) (recognizing that defendant with a prior felony drug conviction can be sentenced to § 841(b)(1)(C)'s 30-year sentence without offending Apprendi); see also United States v. Sheppard, 219 F.3d 766, 768 (8th Cir. 2000) (holding that "where a prior conviction increases the statutory maximum, the use of drug quantity at sentencing will not conflict with Apprendi so long as it results in a sentence within the § 841(b)(1)(C) maximum"), cert. denied, 531 U.S. 1200 (2001).

In this case, the government provided notice of an intent to seek an enhanced sentence of life imprisonment on the basis of Beal's prior felony convictions if it could prove that the offense involved certain listed drug quantities. The jury, however, did not make any findings on drug quantity, and consequently, the rule announced in Apprendi precluded the district court from imposing a sentence of life imprisonment under § 841(b)(1)(A). We now conclude that the government did not forfeit or hinder its ability to seek an enhanced punishment under § 841(b)(1)(C) based on Beal's prior convictions by specifying § 841(b)(1)(A) in the indictment and in the § 851 notice as the applicable penalty provision. Providing notice to the defendant of a potential punishment that is greater than the ultimately applicable

8

maximum sentence results in no prejudice to the defense.  Cf. United States v. Humphreys, 982 F.2d 254, 262 (8th Cir. 1992) (holding that defendant received "adequate notice of the possibility of conviction on the lesser charge when he was charged with the greater offense"), cert. denied, 510 U.S. 814 (1993).  Beal received adequate notice that his prior felony convictions would subject him to a greater sentence than the sentence provided for the offense simpliciter, and the district court properly sentenced Beal under § 841(b)(1)(C) to a 30-year term of imprisonment on the drug counts.

## III.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

9