UNITED STATES of America,
Plaintiff—Appellee,

v.

Anthony D. WILLIAMS, a.k.a. Ray L.
Dixon, Defendant—Appellant.

No. 01–10378.
D.C. No. CR–98–01095–JMR–01.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 2002.

Decided Sept. 4, 2002.

Before FISHER and PAEZ, Circuit Judges, and MOLLWAY, District Judge.*

MEMORANDUM **

Defendant–Appellant Anthony Williams appeals his conviction and sentence, after a

---

\* The Honorable Susan Oki Mollway, United States District Judge for the District of Hawaii, sitting by designation.

\** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

jury trial, for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. § 846. Williams challenges a number of the district court's evidentiary rulings. He also challenges the conspiracy conviction on the basis of insufficiency of the evidence. Finally, he challenges his 324–month sentence, alleging error in (a) applying a two-point enhancement for a leadership role, (b) finding career offender status, and (c) failing to submit to a jury the determination of the weight of the drugs.

We affirm the conviction for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and the 324–month sentence, and reverse the conviction for conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. § 846.

## A. The District Court's Evidentiary Rulings

### 1. Admission of Videotaped Testimony

■ We agree with Williams that the district court's admission of the videotaped deposition of Rebecca Marion violated both his Sixth Amendment right to confront the witnesses against him and Rule 804 of the Federal Rules of Evidence because the government did not establish that Marion was unavailable to testify at trial. *See White v. Illinois,* 502 U.S. 346, 354, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992); *see also Whelchel v. Washington,* 232 F.3d 1197, 1209 (9th Cir.2000).

After serving Marion with a subpoena prior to releasing her from detention, the prosecution made no subsequent effort to maintain contact with her or to advise her of the changing trial dates. *Cf. Acosta–Huerta v. Estelle,* 7 F.3d 139, 143–44 (9th Cir.1992). Although the government had

Marion's last known address, it did not attempt to serve her there or to contact acquaintances or others who might know where she had relocated. *See United States v. Pena–Gutierrez,* 222 F.3d 1080, 1086 (9th Cir.2000). The limited effort to locate Marion was insufficient to establish that she was unavailable to testify at trial. *See Whelchel,* 232 F.3d at 1209. Accordingly, the district court erred in admitting her videotaped deposition.

■ The admission of the videotaped deposition was harmless error because the remaining evidence was sufficient to establish the elements of the crime. *See United States v. Bowman,* 215 F.3d 951, 961 (9th Cir.2000). This evidence included: (1) Williams' tattoos spelling out "Amp," which identified Williams as Amp; (2) Keyes' photo identification of Williams as Amp, which corroborated Marion's identification of Williams; (3) Keyes' statements linking Amp to the drugs, including Amp's description that a woman wearing North Carolina insignia would arrive by bus; and (4) Garcia's testimony corroborating Keyes' statements.

### 2. Admission of Photo Identification Testimony

The district court did not abuse its discretion by admitting Keyes' statements to Garcia identifying Williams as Amp from a photographic lineup. Defense counsel cross-examined Garcia about statements Keyes made regarding her other suppliers' sources of crack. This line of cross-examination put into question Keyes' reliability, and therefore opened the door to the photo identification. *See United States v. Collicott,* 92 F.3d 973, 979–80 (9th Cir.1996).

### 3. Admission of Garcia's Testimony

The district court properly admitted Garcia's testimony about Keyes' side of the

telephone conversation with Amp because Keyes' statements provided necessary context to the telephone conversation, allowing the jury to gain a fuller understanding of Amp's replies to her request for a shipment of cocaine. *See United States v. Whitman*, 771 F.2d 1348, 1351–52 (9th Cir. 1985).

### 4. Admission of Testimony About the Death of an Informant

■ The district court did not abuse its discretion in admitting testimony that Keyes died after making her statements to Garcia and before trial to clarify to the jury why a potentially central witness was not at trial. It is clear that the judge considered the potentially prejudicial effect of this testimony as Rule 403 requires, because the judge gave a limiting instruction, stating to the jury that it would not hear evidence of a criminal agency being the cause of death, and that the jury could conclude that there were other causes of death. *See United States v. Ono*, 918 F.2d 1462, 1465 (9th Cir.1990).

### 5. Informant Credibility Instruction

■ Because Keyes did not testify at trial, the district court did not abuse its discretion when it declined to give an informant instruction cautioning the jury about the reliability of Keyes' statements. In this context, the general credibility instruction was sufficient to guide the jury's consideration of the reliability of Keyes' statements. *United States v. Hernandez–Escarsega*, 886 F.2d 1560, 1573–75 (9th Cir.1989); *see also United States v. Gonzales–Palma*, 645 F.2d 844, 846 (10th Cir. 1981).

### 6. Untimely Disclosed Evidence

■ The district court did not abuse its discretion in admitting tardily-disclosed telephone records and a fingerprint report, or in permitting an examination of Williams' body for tattoos at the end of the trial. *See United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir.1988). Here, the fingerprint report on the baby powder bottle concluded that there were no prints on the bottle. The inconclusive nature of the report was of little help to the government. With respect to the telephone records, Williams makes no showing that they contained any evidence that he could have used at trial. Notably, when confronted with the records, he declined to seek a continuance to ameliorate the late disclosure's impact on his defense. As for the body examination, he does not argue that the district court would have denied the government's request for a body inspection had it been sought earlier than the day of trial. Because Williams has not shown that there was prejudice to his substantial rights, there was no error. *Id.*

### 7. Cumulative Error

We review aggregate constitutional error to determine whether it was harmless beyond a reasonable doubt. *United States v. Necoechea*, 986 F.2d 1273, 1282 (9th Cir.1993) (as amended). Because we have concluded that the erroneous admission of Marion's deposition testimony was the only error here, and that it was harmless, there is no cumulative error.

### B. Conspiracy Conviction

■ We reverse the conspiracy conviction. Considering the evidence in the light most favorable to the prosecution, it is insufficient to establish beyond a reasonable doubt that Williams and Marion agreed to commit the underlying crime or that Marion had the intent to commit the offense of possession of cocaine with intent to distribute. *See United States v. Yossunthorn*, 167 F.3d 1267, 1270 (9th Cir. 1999). Because Keyes was a government

informant, as a matter of law she could not conspire with Williams. *See United States v. Escobar de Bright,* 742 F.2d 1196, 1199–1200 (9th Cir.1984).

The government argues that Marion was "potentially involved with helping the defendant get the cocaine to Tucson." However, the government presented no direct evidence that Marion knew that Williams had agreed to deliver the cocaine and that she was a participant in the delivery. *See United States v. Lopez,* 625 F.2d 889, 897 (9th Cir.1980). Her testimony was that she was not in the room when the cocaine was placed in her bag, and was not aware that she was transporting it. Although Marion carried the suitcase containing the cocaine, there is no direct evidence that she played any part in negotiating the transaction, discussed it with anyone, had a financial interest in the transaction, or was aware that she was transporting it. Indeed, before the jury, the government argued against drawing any inference that Marion knew she was carrying drugs. We are not persuaded by the government's contention that, despite its argument to the jury regarding Marion's lack of knowledge, the jury may have considered Marion to be a co-conspirator. The evidence, as reflected by the government's argument to the jury, does not support such a conclusion.

## C. Sentencing Challenges

### 1. Upward Adjustment for Leadership Role

■ The district court did not clearly err in making an upward adjustment for leadership role because the district court could have found that Williams was the leader or organizer of at least one other participant in the criminal enterprise to distribute drugs. *See United States v. Syrax,* 235 F.3d 422, 427 (9th Cir.2000). Williams played a central role in shipping

the cocaine to Tucson. After observing the witnesses, hearing the testimony and reviewing the pre-sentence report ("PSR"), the district court—unlike the jury—could reasonably have concluded that Marion or others who were in the vicinity when the suitcase was packed knew about the cocaine and participated in an attempt to deliver it to Tucson.

### 2. Career Criminal Enhancement

■ The district court properly relied on information in the PSR when it counted a prior conviction in its application of the career criminal enhancement under U.S.S.G. § 4B1.1. *See United States v. Marin–Cuevas,* 147 F.3d 889, 894–95 (9th Cir.1998). The PSR was based on information from a reliable source, and Williams' statement that he believed there was an expungement is not sufficient to discredit the information in the PSR.

### 3. Different Sentencing Provision

■ There was no error in enhancing Williams' sentence despite the citation in the information to 21 U.S.C. § 841(b)(1)(A) and the government's subsequent reliance at sentencing on § 841(b)(1)(C). The effect of this change was a decrease in the applicable maximum sentence, which was a benefit to Williams. *See United States v. Beal,* 279 F.3d 567, 572–73 (8th Cir.2002).

### 4. No *Apprendi* Violation.

It is not clear whether the district court violated *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), by making a finding that exposed Williams to a sentence greater than the maximum permitted under 21 U.S.C. § 841(b)(1)(C). *United States v. Minore,* 292 F.3d 1109, 1121 n. 10 (9th Cir.2002). We need not decide the question, however, because the sentence actually imposed did not exceed thirty years and thus any *Ap-*

*prendi* error would be harmless. *United States v. Garcia–Guizar,* 234 F.3d 483, 489 (9th Cir.2000).

### Conclusion

The conviction and sentence for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) is AFFIRMED. The conviction for conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. § 846 is REVERSED. This reversal will not affect the sentence because the two convictions were grouped pursuant to U.S.S.G. § 3D1.2(d). We REMAND to the district court for entry of a corrected judgment. *See Yossunthorn,* 167 F.3d at 1273.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.