**NOT FOR PUBLICATION**



UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   14-10141 |
| Plaintiff-Appellee, | D.C. No. 2:11-cr-00234-TLN-1 |
| v. | |
| STEVEN ZINNEL, | MEMORANDUM* |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   14-10106 |
| Plaintiff-Appellee, | D.C. No. 2:11-cr-00234-TLN-2 |
| v. | |
| DERIAN EIDSON, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Troy L. Nunley, District Judge, Presiding

Argued and Submitted November 16, 2017
San Francisco, California

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  W. FLETCHER and PAEZ, Circuit Judges, and WILKEN, District Judge.**

Steven Zinnel appeals his conviction of concealment or transfer of property in anticipation of bankruptcy, 18 U.S.C. § 152(7); concealment of property in bankruptcy proceedings, 18 U.S.C. § 152(1); money laundering, 18 U.S.C. § 1956(a)(1)(B)(i); monetary transactions in criminally-derived property, 18 U.S.C. § 1957; and money laundering conspiracy, 18 U.S.C. § 1956(h).  Derian Eidson appeals her conviction of money laundering conspiracy, 18 U.S.C. § 1956(h); and attempted money laundering, 18 U.S.C. § 1956(a)(1)(B)(i).  We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  We affirm the convictions and reverse and remand the sentences for further proceedings consistent with this opinion.

1.      Constructive amendment or prejudicial variance

Constructive amendment "occurs when the charging terms of the indictment are altered, either literally or in effect."  *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984) (quoting *United States v. Cusmano*, 659 F.2d 714, 718 (6th Cir. 1981)).  Variance "occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from

---

** The Honorable Claudia Wilken, United States District Judge for the Northern District of California, sitting by designation.

those alleged in the indictment." *Id.* (same).  Variance requires reversal only if it affects the substantial rights of the parties.  *Id.* at 587.  We review this issue de novo.  *United States v. Ward*, 747 F.3d 1184, 1188–89 (9th Cir. 2014).

a.  *Zinnel's bankruptcy fraud charges*

There was no amendment or variance with respect to Count 1 or 2.  Both counts describe the fraudulent concealment of the Corporate Control and Done Deal entities, and so the government properly included both companies in its closing argument.  Zinnel's personal bank account, too, was encompassed by Count 2.  The indictment alleges that, "in the bankruptcy case captioned 'In re Steven Zinnel,' Bankruptcy Case No. 05-28800-C7, . . . Zinnel falsely stated under oath that he had no property that was not listed on his [bankruptcy] schedules." This was sufficient notice of the government's theory at trial, which was that Zinnel falsely omitted property from his bankruptcy schedules.

We additionally conclude that even if the personal bank account constituted a variance, the variance was nonfatal because it did not affect Zinnel's substantial rights.  *See United States v. Tsinhnahijinnie*, 112 F.3d 988, 991 (9th Cir. 1997). Evidence of the bank account was provided during discovery and marked as a trial exhibit, and Zinnel did not object when it was introduced at trial.  *Cf. Brulay v. United States*, 383 F.2d 345, 351 (9th Cir. 1967) (finding variance nonfatal where

3

"at no time did the defendant claim surprise"). Moreover, Zinnel was indicted for the *act* of concealing various items of property. Double jeopardy is not implicated because "[t]he fact that several different items of property belonging to the estate of a bankrupt were concealed does not multiply the number of offenses." *Edwards v. United States*, 265 F.2d 302, 306 (9th Cir. 1959).

        b.     *Eidson's money laundering charges*

There was no amendment or variance with respect to Eidson. The government properly charged Eidson under 18 U.S.C. §§ 1956(h) and 1956(a)(1)(B)(i), which require that the defendant conducted or attempted to conduct a "financial transaction which in fact involves the proceeds of specified unlawful activity." The trial record shows that the attempted transaction involved actual proceeds of bankruptcy fraud in System 3's bank account.

Eidson's challenge to Count 19 is similarly misguided. Although the indictment stated the wrong date for her meeting with Frank Radoslovich, this typographical error did not prejudice Eidson. The correct date was apparent from reading the rest of the indictment and the court informed the jury of the correct date.

2.    Jury instructions

"In reviewing jury instructions, the relevant inquiry is whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation." *United States v. Lloyd*, 807 F.3d 1128, 1164 (9th Cir. 2015) (quoting *United States v. Dixon*, 201 F.3d 1223, 1230 (9th Cir. 2000)). We review the formulation of jury instructions for abuse of discretion and their legal sufficiency de novo. *See United States v. Hofus*, 598 F.3d 1171, 1174 (9th Cir. 2010).

a.    *Bankruptcy fraud*

Zinnel argues that the district court erred in declining to include in the jury instructions a description of the property charged. The parties have not cited, and we are not aware of, any cases supporting this argument. The instructions were adequate to guide the jury's deliberation, especially considering that the government's closing argument advised the jury correctly of the property at issue.

The district court similarly did not err in denying Zinnel's request to use a special verdict form listing all of the property charged. *See Bisno v. United States*, 299 F.2d 711, 722–23 (9th Cir. 1961). The district court's use of a general verdict form here was sufficient because the court instructed the jury to return a guilty

verdict only if the jury could unanimously agree that the defendant "concealed at least one of the items of property mentioned in the indictment." *Id.*

b. *Money laundering–"proceeds" and "profits"*

Zinnel argues that the money laundering jury instructions should have clarified that "proceeds" means "profits" rather than gross receipts, to reflect the law established by *United States v. Santos*, 553 U.S. 507, 514 (2008). Because Zinnel did not request this instruction in the district court, his argument on this point is reviewed for plain error. *United States v. Shields*, 844 F.3d 819, 823 (9th Cir. 2016).

A *Santos* instruction is required only when viewing proceeds as gross receipts would present a "merger" problem creating a "radical increase in the statutory maximum sentence . . . when nothing in the legislative history suggests that Congress intended such an increase." *United States v. Van Alstyne,* 584 F.3d 803, 814 (9th Cir. 2009) (quoting *United States v. Kratt*, 579 F.3d 558, 562 (6th Cir. 2009)). Zinnel has not shown that a *Santos* instruction is warranted here. In addition, such an instruction would have made no difference in this case because partnership distributions are shares of profit.

c.      *Money laundering–"simple transfer of cash"*

The district court did not err when it instructed the jury that "the simple transfer of cash from one person to another may constitute a money-laundering offense." *See United States v. Otis,* 127 F.3d 829, 832–33 (9th Cir. 1997).  It is unlikely that the jury would have understood this instruction to omit the interstate commerce element because it was immediately preceded by an instruction stating the opposite.  Read as a whole, the jury instruction was not erroneous.  *United States v. Warren*, 25 F.3d 890, 898 (9th Cir. 1994).

3.      Admission of alleged settlement negotiations

A district court's decision to admit evidence over Rule 408 objections is reviewed for abuse of discretion.  *Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1342 (9th Cir. 1987).

The district court properly admitted evidence of the talks between Zinnel and Wilbert and between Eidson and Radoslovich because the discussions themselves were part of the alleged money laundering.  Rule 408 is "inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions."  *Uforma/Shelby Bus. Forms, Inc. v. NLRB*, 111 F.3d 1284, 1293 (6th Cir. 1997) (quoting 23 Charles Alan Wright & Kenneth W. Graham, Federal Practice and Procedure: Evidence § 5314 (1st ed. 1980)).  The email

Zinnel sent to his ex-wife was also properly admitted because it was not an offer to compromise under Rule 408.

The district court did not err in denying Eidson's request to admit the entire recording of her meeting with Radoslovich. The rule of completeness applies only if the entire statement is required to correct a misleading impression created by the excerpted statement. *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014); Fed. R. Evid. 106. Eidson contends that the full recording was necessary to show that she was merely trying to avoid litigation, but the portions played at trial already showed this. The excerpted recordings were therefore neither misleading nor taken out of context.

4.    <u>Testimony of lawyers</u>

Because Zinnel objected at trial to Radoslovich's testimony, this issue is reviewed for abuse of discretion. *United States v. Lloyd*, 807 F.3d 1128, 1153–54 (9th Cir. 2015). Because he did not object to Gee's testimony, we review for plain error. *Id.* at 1152.

The district court did not err in admitting Radoslovich's testimony about his representation of System 3 with respect to the buyout agreement. Radoslovich properly testified based on his perception of the events. *See* Fed. R. Evid. 701.

Nor did the district court err in allowing assistant United States trustee Edmund Gee to provide background information about handling bankruptcy petitions. *Cf. United States v. Matsumaru*, 244 F.3d 1092, 1101–02 (9th Cir. 2001) (approving use of lay government witnesses to explain mechanics of visa petitions). Zinnel could have called his own bankruptcy expert, but chose not to do so.

Moreover, the district court gave an agreed-upon instruction advising the jury to apply the law as laid out by the court. We presume the jurors followed this instruction. *See United States v. Olano*, 507 U.S. 725, 740 (1993).

5. <u>Sufficiency of the evidence</u>

Eidson challenges her money laundering convictions for lack of sufficient evidence. Zinnel joins her argument on the conspiracy count. We review a challenge to the sufficiency of the evidence de novo. *United States v. Bennett*, 621 F.3d 1131, 1135 (9th Cir. 2010). First, we consider the evidence presented at trial in the light most favorable to the prosecution; second, we determine whether the evidence is adequate to allow "*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Viewed in the light most favorable to the government, there is sufficient evidence for a rational juror to conclude beyond a reasonable doubt that Zinnel and Eidson committed their respective money laundering crimes.

The "financial transaction" element requires an effect on interstate or foreign commerce, or use of a financial institution that is engaged in or affects interstate or foreign commerce. *United States v. Jenkins*, 633 F.3d 788, 804 (9th Cir. 2011). The government established at trial that System 3 paid distribution checks to Zinnel, who cashed them in Done Deal's bank account with Washington Mutual, an FDIC-insured institution engaged in interstate commerce. A rational jury could infer that the buyout payment would be carried out in the same way.

The financial transaction must involve "proceeds of a specified unlawful activity." The government established at trial that Wilbert initiated negotiations with Zinnel to buy out his System 3 interest for roughly $4 million before the government became involved. Wilbert had more than enough cash in the System 3 bank account to pay the required $4 million and had already paid Zinnel's brother $1.5 million for his share.

There was sufficient evidence that Eidson knew that the property involved in the transaction constituted proceeds of unlawful activity. Eidson's conversation with Radoslovich demonstrated that Eidson knew Zinnel had concealed from the

bankruptcy court his interest in System 3, which was the basis for the $4 million buyout. Eidson also participated in Zinnel's bankruptcy proceedings and helped him funnel money from System 3 through Done Deal and her client trust accounts.

Similarly, there was sufficient evidence that Eidson knew the transaction was "designed . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i). Eidson formed Done Deal, helped Zinnel funnel money through Done Deal, and proposed to Radoslovich that the buyout be disguised as a consulting payment to Done Deal.

The evidence of Eidson's acts was also sufficient to show that Zinnel and Eidson engaged in a conspiracy to launder money. They worked together to hide assets before, during, and after Zinnel's bankruptcy proceedings.

The government presented sufficient evidence to prove that Eidson took the required substantial step towards commission of money laundering. *See United States v. Yossunthorn*, 167 F.3d 1267, 1271 (9th Cir. 1999). Eidson sent Radoslovich a letter establishing her representation and attended two meetings to persuade Radoslovich to commit to the agreement. The parties had agreed on the key terms of the deal, including price and method of payment. Had Wilbert and

11

Radoslovich been willing to structure the deal as Zinnel and Eidson proposed, then the transaction would have been completed.

6. Sentencing

Both Zinnel and Eidson challenge their sentences. We first consider whether the district court committed a "significant procedural error." *Gall v. United States*, 552 U.S. 38, 51 (2007). If the district court committed no procedural error, then we consider "the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.*

a. *Zinnel's sentence*

The district court did not err in calculating Zinnel's Guidelines range when it calculated the loss amount based on the amount of debt scheduled to be discharged. *See United States v. Bussell*, 504 F.3d 956, 963 (9th Cir. 2007). Nor did the court err when it calculated the number of victims based on the number of creditors who filed claims in Zinnel's bankruptcy case. The district court properly applied the sophisticated money laundering enhancement based on Zinnel's use of fictitious entities and multiple layers of transactions. Additionally, the aggravated role enhancement was appropriate because Zinnel managed and directed Eidson as well as Tom and Julia Wilbert.

The district court did, however, commit procedural error in sentencing Zinnel. Before allocation and counsel's sentencing arguments, the district court announced its "intent to sentence [Zinnel] to 212 months of imprisonment." During Zinnel's allocution, in which he talked about his background, love for his children, redeeming qualities, and the difficult circumstances of his divorce at the time of the offense, the district court interrupted him, stating, "Mr. Zinnel, I'm going to cut you off right here. Are you almost done? I'm going to give you three more minutes to finish this up. Proceed."

In response, Zinnel repeatedly pleaded for more time. At one point, Zinnel protested, "I did want to address the Court today of why I didn't plea . . . but if I'm getting cut off to three minutes, I don't know how I can possibly do this." At another point, Zinnel asked the court to "[p]lease bear with me just for a moment, Your Honor. We're talking 20 years of my life." Here, the government cut in, stating, "I think the safest thing under Rule 32 is to just let him go until his breath runs out." The court responded, "I'm not going to do that." Although the court allowed Zinnel to continue, it warned him that he would be cut off if he continued to be "self-serving."

Zinnel apologized and tried to focus on his redeeming qualities and the justifications for some of his actions, only to be interrupted by the court once more

13

and told to "wrap it up." Despite Zinnel's subsequent attempts to take "full responsibility" for his actions, express remorse, and illustrate his actions helping others in jail, the district court remained unmoved, remarking that Zinnel's comments were "self-serving" and "really didn't mitigate in [the court's] estimation." After discussing several of the § 3553(a) factors, the district court imposed 212 months, the sentence it originally announced.

The district court's actions unduly limited Zinnel's right to allocution, which is an "essential element of a criminal defense" guaranteed by due process. *Boardman v. Estelle*, 957 F.2d 1523, 1526 (9th Cir. 1992). Zinnel's allocution was relevant to mitigation, focused on his personal qualities, and did not stray into "irrelevant philosophical discussions." *United States v. Mack*, 200 F.3d 653, 657 (9th Cir. 2000). The court's constant interruptions deterred Zinnel's allocution. *See United States v. Sarno*, 73 F.3d 1470, 1503 (9th Cir. 1995). Because the

district court had discretion to impose a shorter sentence, the error was not harmless and resentencing is appropriate.[1] *Id.* at 1503–04.

Zinnel further challenges the district court's orders of restitution and criminal forfeiture. Because the district court did not abuse its discretion, we affirm both orders.

b. *Eidson's sentence*

The district court did not abuse its discretion in calculating the loss amount attributable to Eidson as $4 million, the amount Wilbert offered Zinnel in exchange for his interest in System 3. Nor did the district court err in imposing both the sophisticated money laundering and abuse of position enhancements. The two enhancements serve "separate and distinct purposes." *United States v. Gallegos*,

---

[1] Accordingly, we need not reach Zinnel's challenge to the substantive reasonableness of his sentence. We note, however, that Zinnel's 212-month sentence is the longest sentence ever imposed for bankruptcy fraud in the Eastern District of California. The district court is not required to compare Zinnel's sentence "to the sentence of every criminal defendant who has ever been sentenced before," *United States v. Treadwell*, 593 F.3d 990, 1012 (9th Cir. 2010), but the disparity here warranted a more detailed discussion of the court's reasoning. The record as a whole should "reflect[] rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Ressam*, 679 F.3d 1069, 1089 (9th Cir. 2012) (en banc) (quoting *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc)). The district court's actions limiting Zinnel's allocution, paired with its incomplete discussion of § 3553(a), suggest that it may not have considered all of the facts relevant to the sentencing factors. The court should also have explained why Zinnel's sentence was "sufficient, but not greater than necessary" to accomplish the sentencing goals. *Id.* at 1088.

613 F.3d 1211, 1216 (9th Cir. 2010).  The sophisticated money laundering enhancement punishes complex and intricate schemes, and the abuse of position enhancement punishes misuse of a trusted position.

With respect to Eidson, the district court again addressed some, but not all, of the sentencing factors before imposing a sentence of 121 months.  As with Zinnel, the court did not explain why the sentence was "sufficient, but not greater than necessary" to accomplish § 3553(a)'s sentencing goals.  *Ressam*, 679 F.3d at 1088.  Instead, the court stated that it did not think there was "any significant difference between a sentence of, what, 108 months, nine years, versus a sentence of 121 months, which is a year and a month more than that sentence."  To the contrary, even a minimal amount of additional time in prison is significant to the defendant and can constitute prejudice.  *Cf. Glover v. United States*, 531 U.S. 198, 203 (2001).  The court's statements indicate that it did not impose the minimum sentence necessary.  Accordingly, resentencing is warranted.

Lastly, Zinnel and Eidson both contend the case should be assigned to a different judge on remand.  Reassignment is not warranted, however, because there are no "unusual circumstances" indicating that the judge would have difficulty in reconsidering his previously expressed views.  *United States v. Quach*, 302 F.3d 1096, 1103 (9th Cir. 2002).

16

We have considered the remainder of the parties' arguments and find them to be without merit.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED for resentencing consistent with this disposition.**