127 F.3d 829
 47 Fed. R. Evid. Serv. 1335, 97 Cal. Daily Op.
Serv. 7879,
97 Daily Journal D.A.R. 12,672
UNITED STATES of America, Plaintiff-Appellee,
v.
James Howard OTIS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jesus MONSALVE, aka Juan; aka Enano; aka Adolpho,
Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arthur Loza ROMO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Osbaldo MONTALVO-DOMINGUEZ, aka El Gordo, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mario Saide AGUILERA-RAMIEREZ, aka Mario Saide Aguilera
Ramirez; aka Mario Aguilera; aka Mario Rivas,
Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dario CAMACHO, aka German, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bernardo CASAS, Defendant-Appellant.
 Nos. 93-50649, 94-50430, 94-50438, 94-50468, 94-50492,
94-50520, 94-50649.
United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 3, 1996.
Decided Oct. 7, 1997.
 
 Henry Reynolds, Santa Monica, CA, for defendants-appellants Otis and Montalvo-Dominguez.
 James M. Hodges, Signal Hill, CA, for defendant-appellant Monsalve.
 William L. Heyman, Thousand Oaks, CA, for defendant-appellant Aguilera-Ramirez.
 Judith Rochlin, Los Angeles, CA, for defendant-appellant Romo.
 Scott S. Furstman, Santa Monica, CA, for defendant-appellant Camacho. Mark Bernheim (argued), Santa Monica, CA, for defendant-appellant Camacho.
 Morton H. Boren, Los Angeles, CA, for defendant-appellant Casas.
 Jean M. Mohrbacher, Assistant United States Attorney, Los Angeles, CA, for plaintiff-appellee.
 Thomas P. Sleisenger (briefed and argued), Assistant United States Attorney, Los Angeles, CA, for plaintiff-appellee.
 Appeals from the United States District Court for the Central District of California; Gary L. Taylor, District Judge, Presiding. D.C. Nos. CR-92-00814-GLT-11, CR-92-00814-GLT-10, CR-92-00814-GLT-17, CR-92-00814-GLT-2, CR-92-00814-GLT-3, CR-92-00814-GLT-5, CR-92-00814-GLT-6.
 Before: FLETCHER, BEEZER, and KLEINFELD, Circuit Judges.
 Per Curiam Opinion; Partial Concurrence and Partial Dissent by Judge FLETCHER.
 PER CURIAM:
 
 
 1
 The DEA set up what purported to be a money laundering operation for cocaine dealers. It was a dramatic success. Appellants participated in various ways in helping the Cali cartel get cocaine money back to Colombia. They used the DEA's phony money laundering operation, not realizing they were turning the Cali cartel's money over to the DEA, and turning themselves in to federal law enforcement. Appellants were convicted of various conspiracy, money laundering and gun crimes, detailed below as necessary. The government's theory, proved to the satisfaction of the jury, was that appellants conspired not only to launder money, but also to aid and abet the sale of cocaine by so doing.
 
 
 2
 We consider first the defendants' common arguments and then their individual arguments.
 
 
 3
 I. Common Arguments.
 
 
 4
 A. Alleged Conflicting Jury Instructions (Stein Error).
 
 
 5
 Several defendants claim that the jury instructions were conflicting under United States v. Stein, 37 F.3d 1407 (9th Cir.1994). They did not object on this ground, so we review for plain error. Relying on United States v. Golb, 69 F.3d 1417, 1428 (9th Cir.1995), we conclude that there was no plain error. The facts in this case are more analogous to Golb than Stein.
 
 
 6
 B. Whether Delivery of Money Can Support a Conviction for Laundering Money.
 
 
 7
 Appellants argue insufficiency of evidence, on the theory that the mere delivery of money from a defendant to a money launderer does not constitute taking steps to conceal or disguise the nature of the funds being transferred. Appellants based their argument on Sixth Circuit authority. United States v. Reed, 77 F.3d 139 (6th Cir.1996), however, overrules United States v. Samour, 9 F.3d 531 (6th Cir.1993), the primary case on which defendants rely. We do not see a basis in 18 U.S.C. § 1956(a)(1)(B)(i) and § 1956(c)(3) for appellants' theory as applied to the evidence in this case.
 
 
 8
 Defendants also argue that mere delivery fails to prove that the transaction was designed to conceal or disguise the nature, location, source, ownership or control of the proceeds. They rely on Tenth Circuit authority, United States v. Dimeck, 24 F.3d 1239 (10th Cir.1994), subsequently distinguished and limited in United States v. Salcido, 33 F.3d 1244, 1245-46 (10th Cir.1994). There was sufficient evidence for the jury to find that the defendants intended to assist the Cali cartel in laundering its money, and were not merely delivering money.
 
 
 9
 C. Double Jeopardy-Conspiracy Counts.
 
 
 10
 Several defendants argue that their convictions on both Counts I and II violate the Double Jeopardy Clause. We consider the argument even though it was not preserved in district court, because it is purely legal and, if correct, the argument would relate to a miscarriage of justice. See Jovanovich v. United States, 813 F.2d 1035, 1037 (9th Cir.1987).
 
 
 11
 Count I charges that defendants "conspired and agreed ... to aid and abet the distribution of cocaine" in violation of 21 U.S.C. § 841(a)(1). Count II charges that the defendants "conspired and agreed ... to conduct financial transactions, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity" in violation of 18 U.S.C. § 1956(a)(1)(B)(i). The indictment sets out factual details of the defendants' activities in great detail in the "means of the conspiracy" and "overt acts" portions of Count I, and then incorporates by reference the same averments for the means and overt acts portions of Count II.
 
 
 12
 The elements of the crimes as set out in the statutes differ, so there was no double jeopardy. See Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); United States v. Cuevas, 847 F.2d 1417, 1429 (9th Cir.1988). Blockburger does not direct us to compare the evidence necessary to convict the defendants of both offenses; rather, it directs us to engage in statutory construction of the two provisions under which the defendants are convicted. "[W]e focus upon the statutory elements of each offense, rather than on the actual evidence presented at trial." United States v. Wolfswinkel, 44 F.3d 782 (9th Cir.1995) (citing Illinois v. Vitale, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980)). "[T]wo offenses are not the same offense for double jeopardy purposes if 'each provision requires proof of an additional fact which the other does not.' " Id. (quoting Blockburger, 284 U.S. at 304, 52 S.Ct. at 182). "[S]ubstantial overlap in the proof" does not establish double jeopardy. United States v. Cuevas, 847 F.2d 1417, 1429 (9th Cir.1988).
 
 
 13
 In this case, the same act constitutes two crimes, and punishing it as such does not violate double jeopardy. One needs to agree to a plan to conceal proceeds of an unlawful activity to be guilty of conspiracy to launder money, but one need not agree to a plan to conceal proceeds to be guilty of conspiracy to aid and abet the distribution of drugs. Likewise, one needs to agree to a plan to aid the distribution of drugs to be guilty of conspiracy to aid and abet the distribution of drugs, but one need not agree to a plan to aid the distribution of drugs to be guilty of conspiracy to launder money. Here, it just happens that the proceeds laundered are drug proceeds and not the proceeds of some other unlawful activity.
 
 
 14
 Conspiracy to launder money, 18 U.S.C. §§ 371, 1956(a)(1)(B)(i), is not a lesser included offense of conspiracy to aid and abet the distribution of controlled substances, 21 U.S.C. §§ 841(a)(1), 846. See United States v. Cuevas, 847 F.2d 1417, 1429 (9th Cir.1988) (no double jeopardy violation for conviction of conspiracy to distribute narcotics, 18 U.S.C. §§ 841, 846, and conviction of conspiracy to not report currency transactions, 18 U.S.C. § 371, despite fact that same act, removing money from United States, constituted actus reus of both crimes).
 
 
 15
 D. Admission of Prior Convictions.
 
 
 16
 Several defendants argue that the district court abused its discretion when it admitted evidence of their prior drug convictions. The district court was within its discretion in deciding that the prior convictions were relevant to show knowledge that the money was derived from cocaine sales, and, therefore, admissible under Federal Rule of Evidence 404(b). See United States v. Garcia-Orozco, 997 F.2d 1302, 1304 (9th Cir.1993); United States v. Arambula-Ruiz, 987 F.2d 599, 602 (9th Cir.1993). Though for different crimes, the prior convictions tend to show that defendants were familiar enough with the cocaine business to allow an inference of knowledge. The district court did not abuse its discretion in deciding that relevance outweighed unfair prejudice.
 
 
 17
 E. The Conspiracy Charge.
 
 
 18
 Several appellants argue that conspiracy to launder money cannot also be aiding and abetting a conspiracy to sell cocaine. We are bound by the proposition that if a defendant "knowingly facilitates movement of money derived from narcotics out of the United States for narcotics traffickers, he can be found guilty of a conspiracy to aid and abet narcotics trafficking." United States v. Cuevas, 847 F.2d 1417, 1422 (9th Cir.1988). Appellants' argument fails.
 
 
 19
 II. Individual Arguments.
 
 
 20
 A. Otis.
 
 
 21
 Otis argues that the district court erred in making his federal sentence consecutive to his Texas sentence. He waived his right to appeal in his plea agreement, but the right was revived because the district court told him he could appeal. See United States v. Buchanan, 59 F.3d 914, 916 (9th Cir.1995). The district court had discretion to make the sentence consecutive or concurrent, but did not indicate that it gave consideration to which to do, or state why it made the sentence consecutive. See U.S.S.G. § 5G1.2; U.S.S.G. § 5G1.3, applic. note 3 (1992); United States v. Redman, 35 F.3d 437, 440 (9th Cir.1994). We vacate Otis's sentence and remand for resentencing. See United States v. Washington, 66 F.3d 1101, 1105 (9th Cir.1995). We vacate the sentence entirely, not because we have identified other errors, but only so that the district court need not consider the scope of our mandate in the course of resentencing.
 
 
 22
 B. Montalvo-Dominguez.
 
 
 23
 As the government concedes, there was insufficient evidence to convict Montalvo-Dominguez of Count 26, charging a violation of 18 U.S.C. § 924(c), in light of Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Accordingly, we vacate his conviction on that count and his sentence. We remand for resentencing.
 
 
 24
 Montalvo-Dominguez argues that the evidence was insufficient to support his conviction as a manager in a continuing criminal enterprise under 21 U.S.C. § 848, because the government provided no evidence that Montalvo had supervised five or more people. The defendant "must exercise some sort of managerial responsibility," not just engage in a business relationship, United States v. Jerome, 942 F.2d 1328, 1331 (9th Cir.1991), though he need not necessarily be able to control those whom he organizes, United States v. Delgado, 4 F.3d 780, 785 (9th Cir.1993), nor be the "ringleader" of the organization. United States v. Baker, 10 F.3d 1374, 1409 (9th Cir.1993). The government did not argue to the jury that its own undercover operatives be counted as supervisees.
 
 
 25
 There was sufficient evidence for the jury to find that Montalvo organized Herrera and Blood to track down and kill two people in San Diego. Montalvo-Dominguez is incorrect in his contention that customers cannot count as supervisees under United States v. Delgado, 4 F.3d 780, 785 (9th Cir.1993). That case establishes that customers are not supervisees by reason of that fact alone, but does not exclude the possibility that a person could be both a customer and a supervisee. But we are unable to glean from either the evidence or the government's explanation of it in its brief in what way Montalvo-Dominguez was the organizer, supervisor or manager of any of the others on its list. All we can see is that he worked with them. That is not enough. Accordingly, Montalvo-Dominguez's CCE conviction is vacated.
 
 
 26
 Additionally, the government concedes that Rutledge v. United States, 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), holds that double jeopardy bars convictions for both continuing criminal enterprise under 21 U.S.C. § 848 and conspiracy to commit a lesser included offense of CCE under 21 U.S.C. § 846. Rutledge, 517 U.S. at ---- - ----, 116 S.Ct. at 1245-51. Because we hold that the CCE conviction must be vacated, the double jeopardy argument is moot.
 
 
 27
 C. Monsalve.
 
 
 28
 Monsalve argues that the district court erred in denying him a duress instruction. He was entitled to one if he presented evidence of (1) immediate threat of death or serious bodily injury, (2) well-grounded fear that the threat will be carried out, and (3) no reasonable opportunity to escape the threatened harm. United States v. Asuncion, 973 F.2d 769, 772 (9th Cir.1992). Monsalve's testimony, if the jury believed it, established that he had lost $300,000 of the Cali cartel's money to the police, and that the Cali cartel did not believe Monsalve and thought he had stolen their money. The cartel kidnapped Monsalve's father in Colombia, and then agreed to release the father so long as Monsalve worked for them in the United States. The government argues that there is no immediacy to the threat, but a jury could conclude that Monsalve was forced to work for the cartel by the threat of a second kidnapping of his father, which would take place immediately if he did not follow orders. If Monsalve's account is true, this is, in fact, what happened during his trip to Colombia. Monsalve testified that he was blindfolded, taken to a warehouse and surrounded by twenty armed men, and then told to call home where his sister told him their father had been kidnapped. The government argues that under Monsalve's account, he could have escaped by cooperating with the American authorities. We do not see how protection would have protected his father in Colombia. See United States v. Contento-Pachon, 723 F.2d 691, 694 (9th Cir.1984). Accordingly, Monsalve should have received a duress instruction. We vacate his convictions and remand his case for retrial.
 
 
 29
 D. Aguilera-Ramirez.
 
 
 30
 Aguilera argues that there was insufficient evidence to support his conspiracy conviction. He contends that the government produced evidence of multiple conspiracies, but not of the single conspiracy alleged in the indictment. The test for whether a single conspiracy existed, as opposed to multiple conspiracies "is whether there was one overall agreement to perform various functions to achieve the objectives of the conspiracy." United States v. Arbelaez, 719 F.2d 1453, 1457 (9th Cir.1983) (quotations omitted). Whether there was one conspiracy or many was a jury question, especially in light of the involvement of Irurita and Montalvo throughout the period in question. See United States v. Bibbero, 749 F.2d 581, 587 (9th Cir.1984). We have examined the evidence, and conclude that a reasonable jury could find that there was a single conspiracy as charged, and that Aguilera-Ramirez was a member.
 
 
 31
 E. Romo.
 
 
 32
 Romo argues that there was insufficient evidence that he knew the money represented the proceeds of cocaine sales. A reasonable jury could have concluded from the evidence about Romo's pager contacts, associations, and criminal history that when he handed over $60,000 cash in a parking lot, he knew the money represented proceeds of cocaine distribution. Likewise, a jury could permissibly conclude from the evidence that Romo was part of the conspiracy. See United States v. Mares, 940 F.2d 455, 458 (9th Cir.1991).
 
 
 33
 Romo also argues that the district court erred in denying him a reduction for minor participant status under U.S.S.G. § 3B1.2. The district court found that "[t]he involvement of the defendant was more than a cameo appearance, it was more than a minor or a minimal participant passing through." The court continued, "the evidence in view of all of the things that are going on indicates a deeper involvement than simply a passing, innocent participant recruited for one single event." These findings were not clearly erroneous, and denial of the reduction was a proper exercise of discretion.
 
 
 34
 Romo also argues that he was entitled to a reduction for acceptance of responsibility, because after he was convicted in a jury trial, he wrote a letter to the court saying "I am truly sorry for the present offense." The district court did not abuse its discretion in denying the adjustment. See United States v. Dia, 69 F.3d 291 (9th Cir.1995).
 
 
 35
 F. Camacho.
 
 
 36
 Camacho argues insufficiency of evidence, but our independent review establishes that Camacho's "involvement, however slight" Mares, 940 F.2d at 458, was a jury question. Nor are we able to identify an error with regard to Camacho's challenges to the jury instructions. The court's instructions sufficiently cover the defendant's theories. See Baker, 63 F.3d at 1499.
 
 
 37
 The district court was within its discretion in denying Camacho's motion to sever. See United States v. Cuozzo, 962 F.2d 945, 950 (9th Cir.1992); United States v. Ramirez, 710 F.2d 535 (9th Cir.1983). The instructions adequately protected Camacho's right to have his case considered individually. See United States v. Vasquez-Velasco, 15 F.3d 833, 846 (9th Cir.1994).
 
 
 38
 The district court was also within its discretion in converting quantity of money into drugs for sentencing purposes under U.S.S.G. § 2D1.1, because there was evidence connecting the money to drug-related activities. See United States v. Gonzalez-Sanchez, 953 F.2d 1184 (9th Cir.1992). There was evidence of the going rate for cocaine in Chicago which supported the conversion rate. There was also no serious issue regarding foreseeability as to the amount for which the court sentenced Camacho. See United States v. Castaneda, 9 F.3d 761, 769-70 (9th Cir.1993). As with Romo, there is no merit to Camacho's argument that he was entitled to a three level downward adjustment for acceptance of responsibility because after being convicted at trial he said "I accept responsibility."
 
 G. Casas
 
 39
 Casas's sufficiency of evidence and jury instructions arguments fail for the reasons discussed with respect to his codefendants. He argues that he was entitled to the "safety valve provision" under 18 U.S.C. § 3553(f). Subsection (f)(5) requires that "not later than the time of the sentencing hearing, [Casas] truthfully provided to the Government all information and evidence the defendant has concerning the offense." Casas argues that he "offered to discuss his involvement," not that he did provide the information designated in the statute. Evidently he bargained for a misdemeanor plea, and the government would not give it to him, so he did not provide the information. In these circumstances, the district court's finding that Casas did not provide the information required under subsection (f)(5) of the statute was not clearly erroneous.
 
 
 40
 III. Conclusion.
 
 
 41
 We VACATE Otis's sentence and remand to the district court for resentencing. Montalvo-Dominguez's convictions on counts 26 and 28 are VACATED, and we REMAND for resentencing. Monsalve's convictions are VACATED, and we REMAND for retrial. Otherwise, we AFFIRM.
 
 
 42
 FLETCHER, Circuit Judge, Concurring in part and Dissenting in part.
 
 
 43
 Although I concur in the result in other portions of the majority's disposition, I vigorously dissent from its holding in Section C that it was not a violation of the Double Jeopardy Clause to sentence defendants Montalvo-Dominquez, Monsalve, Aguilera, Camacho, and Casas on both Counts I and II.
 
 
 44
 The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V., cl. 2. "It has long been understood that separate statutory crimes need not be identical--either in constituent elements or in actual proof--in order to be the same within the meaning of the constitutional prohibition." Brown v. Ohio, 432 U.S. 161, 164, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial. Id. at 165, 97 S.Ct. at 2225. The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted).
 
 
 45
 The test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):
 
 
 46
 The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not....
 
 
 47
 This test emphasizes the elements of the two crimes. If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. Brown, 432 U.S. at 166, 97 S.Ct. at 2226 (citing Iannelli v. United States, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293-94 n. 17, 43 L.Ed.2d 616 (1975))(internal quotations omitted).
 
 
 48
 Count I in the case before us charges that defendants "conspired and agreed ... to aid and abet the distribution of cocaine" in violation of 21 U.S.C. § 841(a)(1). The means by which they did so was by collecting and laundering proceeds from the sale of cocaine. See First Superseding Indictment, 3. Proof of this offense necessarily requires proof of all of the elements of Count II, which charges that defendants "conspired and agreed ... to conduct financial transactions, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity" in violation of 18 U.S.C. § 1956(a)(1)(B)(i).
 
 
 49
 In fact, although two statutes have been violated, only one conspiracy existed: the defendants conspired to aid the distribution of cocaine by laundering money. In United States v. Cuevas, 847 F.2d 1417, 1422 (9th Cir.1988), we held that if a defendant knowingly facilitates movement of money derived from narcotics out of the United States, he can be found guilty of a conspiracy to aid and abet narcotics trafficking. That is all that happened here. Count II is multiplicitous.[1]
 
 
 50
 Here, an agreement to engage in actions that are integral to the success of a narcotics enterprise--laundering illicit proceeds--violates 21 U.S.C. § 846 as a conspiracy to aid and abet the distribution of controlled substances. See Cuevas, 847 F.2d at 1422 ("There is no dispute that where a defendant knowingly facilitates movement of money derived from narcotics out of the United States for narcotics traffickers, he can be found guilty of a conspiracy to aid and abet narcotics trafficking."); United States v. Dela Espriella, 781 F.2d 1432, 1436 (9th Cir.1986) ("It is today well settled that a person can be liable for conspiracy because he provides a central service to a criminal venture. Several courts have addressed laundering of illicit narcotics proceeds directly and have concluded that such activities may be integral to the success of a narcotics conspiracy") (citations omitted).
 
 
 51
 That 21 U.S.C. § 846 could be used to charge conspiracies to commit any number of offenses does not establish that the § 846 offense (Count I) charged here is necessarily a different offense from that charged in Count II. Harris v. Oklahoma, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (per curiam) (1977), informs our analysis. In Harris the Court made clear that conviction for felony murder would bar a subsequent prosecution for robbery with a firearm because although a felony murder conviction could result from a myriad of different felonies, the felony murder charge in Harris was based on the same underlying robbery with a firearm that was subsequently charged. Id. The Court said the Double Jeopardy Clause barred the subsequent robbery-firearm prosecution.
 
 
 52
 Here the conspiracy to aid and abet narcotics distribution by money laundering is the same money laundering that is charged in Count II. As in Harris, double jeopardy bars the second charge because the particular means by which the first count was accomplished, money laundering, is the basis for the second charge. In Harris, the general crime of felony-murder required proof of the element of robbery with a firearm; here, the general crime of aiding and abetting a conspiracy to distribute cocaine required proof that the defendants were laundering money. In both cases, the element necessary to prove the more general offense is a lesser-included offense of the charged crime (robbery with a firearm; money laundering). In both cases, double jeopardy bars subsequent prosecution or conviction for that lesser included offense. See also United States v. Dixon, 509 U.S. 688, 698, 113 S.Ct. 2849, 2857, 125 L.Ed.2d 556 (1993) (citing Harris for the proposition that, for double jeopardy purposes, the crime generally described as felony murder is not a separate offense distinct from its various elements).
 
 
 53
 The indictment in this case charges these defendants with aiding and abetting the distribution of cocaine and other narcotic drug controlled substances by collecting and laundering proceeds from the sale of cocaine. As proof, the government offered evidence that these defendants collected and laundered drug proceeds. The jury was specifically instructed that the defendants were on trial "only for the crimes charged in the indictment, not for any other activities." See Court's Instruction No. 9. The jury was then read Count One of the indictment. We must therefore presume that the jury found the defendants guilty of conspiracy to distribute cocaine by laundering money from its sale.
 
 
 54
 Money laundering requires proof that the defendant know that the funds are proceeds of crime and intends to conceal its source while conspiracy under the cocaine distribution statute requires proof of a conspiracy to violate narcotics laws. These defendants were charged with aiding and abetting the distribution of cocaine (Count I), which requires proof that the defendants aided or encouraged others in the violation of narcotics laws. Once it is established that the defendants aided and abetted the distribution of cocaine by laundering money, intent to conceal money that is the proceeds of a crime has already been proved. This is not a case of "substantial overlap in proof," this is a case in which Count I entirely overlaps Count II. It swallows it.
 
 
 55
 The Supreme Court has repeatedly found that two different statutes define the "same offense," when one is a lesser included offense of the other. See e.g., Rutledge v. United States, 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996) (concluding that multiple punishments could not be imposed because conspiracy to distribute cocaine and conducting a continuing criminal enterprise that consisted of a series of unlawful acts involving the distribution of cocaine were the same crime); United States v. Dixon, 509 U.S. 688, 697, 113 S.Ct. 2849, 2856-57, 125 L.Ed.2d 556 (1993) (subsequent criminal prosecutions for assault and drug offenses after contempt convictions for violating prohibitions on both offenses barred for failing the Blockburger test because the later criminal offenses did not include any elements not contained in the previous contempt offenses); Ball v. United States, 470 U.S. 856, 861-64, 105 S.Ct. 1668, 1671-73, 84 L.Ed.2d 740 (1985) (concluding that multiple convictions were barred because statutes directed at receipt and possession of a firearm amounted to the same offense, in that proof of receipt necessarily included proof of possession); Whalen v. United States, 445 U.S. 684, 691-95, 100 S.Ct. 1432, 1437-40, 63 L.Ed.2d 715 (1980) (concluding that two punishments could not be imposed because rape and felony murder predicated on the rape were the same offense); Brown v. Ohio, 432 U.S. 161, 167-68, 97 S.Ct. 2221, 2226-27, 53 L.Ed.2d 187 (1977) (finding the offense of joyriding to be a lesser included offense of auto theft because "[t]he prosecutor who has established joyriding need only prove the requisite intent [to permanently deprive] in order to establish auto theft; the prosecutor who has established auto theft necessarily has established joyriding as well.").
 
 
 56
 While I agree with the majority that in many cases the same criminal conduct may violate two or more criminal statutes and the same criminal agreement may violate two or more criminal conspiracy statutes, Albernaz v. United States, 450 U.S. 333, 339, 101 S.Ct. 1137, 1142, 67 L.Ed.2d 275 (1981), that does not end the inquiry. We must look to whether one is a lesser included offense of the other.
 
 
 57
 Because the two charged conspiracies here are neither reciprocally distinguishable nor independent of each other, defendants have been sentenced twice for the same offense in violation of the Double Jeopardy Clause. Accordingly, I dissent.
 
 
 
 [1]
 Wright defines "multiplicity" as the charging of a single offense in several counts. 1 Charles Alan Wright, Federal Practice and Procedure § 142 (1982)