UNITED STATES of America,
Plaintiff–Appellee,

v.

Mariano PIMENTEL–TAFOLLA, aka
Mariano Pimentel, Defendant–
Appellant.

United States of America,
Plaintiff–Appellee,

v.

Randy James, Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Donald Frank Printz, aka Griz,
Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Vincent Martinez, Defendant–
Appellant.

United States of America,
Plaintiff–Appellee,

v.

Carlos Salazar López, aka Carlos
Salazar, Defendant–
Appellant.

United States of America,
Plaintiff–Appellee,

v.

William Lanter, aka Wild Bill,
Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Joshua Springfield, Defendant–
Appellant.

Nos. 99–30330, 99–30335, 99–30336,
99–30337, 99–30357, 99–30358,
99–30369.
D.C. No. CR–97–00037–JDS.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 10, 2001.

Decided Jan. 6, 2003.

Before McKEOWN, W. FLETCHER, and RAWLINSON, Circuit Judges.

## ORDER

This Court's memorandum disposition, filed October 17, 2002, is hereby withdrawn and replaced with the attached disposition.

With the filing of this new disposition, Appellant Springfield's petition for rehearing, filed October 31, 2002, is DENIED.

## MEMORANDUM *

The seven defendants in these consolidated cases (Mariano Pimentel–Tafolla, Randy James, Donald Frank Printz, Vincent Martinez, Carlos Salazar–Lopez, William Lanter, and Joshua Springfield) were involved, to varying degrees, in a methamphetamine trafficking conspiracy in Billings, Montana. All were convicted of conspiracy to possess methamphetamine with intent to distribute, under 21 U.S.C. §§ 841(a)(1), 846, and 18 U.S.C. § 2. Each defendant was also convicted of some combination of various counts of possessing with intent to distribute methamphetamine, under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and using a firearm in a drug trafficking crime, under 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2. The facts of the case and the specific convictions are well known to all parties, so we will not repeat them here except as necessary to explain our holding.

We address Appellants' contentions on appeal in turn.

## 1. Pimentel–Tafolla's Motion for a Mistrial

■ Pimentel–Tafolla argues on appeal that the district court should have granted his motion for a mistrial based on the prosecutor's statements during his closing argument. The prosecutor stated in his closing argument that the defendants failed to testify, but he explicitly stated that they had a constitutional right to do so and he did not dwell on the point. While a prosecutor may violate the Fifth Amendment if he comments on a defendant's failure to testify at trial, *Griffin v. United States*, 380 U.S. 609, 611–12, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), such a comment is impermissible only "if it is

manifestly intended to call attention to the defendant's failure to testify or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." *United States v. Tarazon*, 989 F.2d 1045, 1051–52 (9th Cir. 1993) (citations omitted). Rather than calling attention to the defendants' failure to testify, the prosecutor called attention to their failure to call other witnesses.

■ Pimentel–Tafolla also claims that the prosecutor should not have commented on his (and the other defendants') failure to call witnesses. We have held that a prosecutor's comment on a defendant's failure to call witnesses is proper as long as it "is not phrased as to call attention to defendant's own failure to testify." *United States v. Passaro*, 624 F.2d 938, 944 (9th Cir.1980). The prosecutor's comments here were focused on the "unfairness" of defense counsel's comments about other witnesses, given their failure to call witnesses of their own to refute the testimony of the government's witnesses, and did not focus on the defendants' failure to testify.

The district court therefore did not abuse its discretion in denying Pimentel–Tafolla's motion for a mistrial.

## 2. Reduction in James's Base Offense Level for Acceptance of Responsibility

■ James contends on appeal that his base offense level should have been decreased because of his acceptance of responsibility. However, James did not plead guilty; instead, he went to trial on all seven counts. He claims on appeal that he chose that course because his attorney recommended it on the ground that a guilty plea would have required him to plead to the entire weight of the drugs

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

involved in the conspiracy, and that his pre-trial conversations with law enforcement officials should count as acceptance of responsibility.

Section 3E1.1(a) of the Federal Sentencing Guidelines ("U.S.S.G."), pertaining to acceptance of responsibility, provides that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense," the base offense level is to be decreased by two levels. In a case in which the defendant "presented an elaborate and complex defense, challenging both the legal validity of the government's theory of the case and his factual guilt," we held that the district court had not clearly erred in denying the downward adjustment. *United States v. Hicks*, 217 F.3d 1038, 1050 (9th Cir.2000).

Because James forced the government to prove his guilt beyond a reasonable doubt at trial, and because he did not clearly accept responsibility during his pre-trial conversations with law enforcement officials, his actions do not fall within the rule for acceptance of responsibility as construed by this court.

3. **Rule 29 Motion and Sufficient Evidence for Conviction of Conspiracy and Possession**

 Printz, Martinez, Salazar–Lopez, Lanter, and Springfield argue on appeal that the district court erred by denying their Federal Rule of Criminal Procedure 29 motions for judgments of acquittal. They contend that multiple conspiracies, not a single conspiracy, were proven at trial. Printz and Lanter further claim that the evidence presented at trial was insufficient to convict them either of conspiracy or of possession of methamphetamine with intent to distribute.

A. **Rule 29 Motion for Judgment of Acquittal**

Viewing the evidence in this case in the light most favorable to the prosecution, as we must, it appears that there was ample evidence for a reasonable jury to conclude beyond a reasonable doubt that there was a single conspiracy. Salazar acquired drugs from suppliers in Turlock, California. Although he first sold the drugs in Billings through a distributor named Lira, Lanter soon became involved in the distribution. Lanter purported to have Mafia and law enforcement connections, and Salazar was informed he would have to pay off Lanter if he wanted to do business in Billings. Lanter housed Salazar at one point; sold his house to help Salazar pay off drug debts; accompanied Salazar in kidnapping and beating Lira, who had not paid for some drugs; and finally accompanied Salazar back to California to buy more methamphetamine. Martinez also accompanied Lanter and Salazar back to Billings. The three sold the drugs acquired on that trip from adjoining hotel rooms in Billings. Later shipments of drugs, which were driven by Pimentel–Tafolla from Turlock to Billings, were distributed by Salazar, Printz, James, Springfield, and others not party to this action.

While some people involved in distributing earlier shipments were not involved in distributing later shipments, a reasonable jury could have found that there was one conspiracy, the point of which was to bring drugs from Turlock to Billings and to distribute them there at a profit. Each member played essentially the same role throughout his association with the conspiracy, although the method of transporting the drugs from California to Montana changed because the conspiracy was successful and therefore needed to bring in larger quantities of drugs for distribution. As we have previously stated, "[e]ach ap-

pellant benefit[t]ed from the other appellants' participation in the illegal enterprise. The appellants depended on a functioning distribution network that could sell their [drugs] whenever they had a supply." *United States v. Arbelaez,* 719 F.2d 1453, 1459 (9th Cir.1983).

Therefore, the district court did not err in denying Appellants' Rule 29 motions.

### B. Sufficiency of the Evidence

*Conspiracy*

Printz and Lanter claim that the evidence was insufficient to connect them to the conspiracy. In order to connect a defendant to a conspiracy, " '[t]he government need not show direct contact or explicit agreement between the defendants. It is sufficient to show that each defendant knew or had reason to know of the scope of the conspiracy and that each defendant had reason to believe that [his] own benefits were dependent upon the success of the entire venture.' " *Id.* at 1458–59 (citations omitted). Furthermore, "[e]vidence is sufficient to connect a defendant to a conspiracy if it shows that the defendant had knowledge of and participated in the conspiracy." *United States v. Duran,* 189 F.3d 1071, 1078 (9th Cir.1999).

■ Printz was aware of the significant amount of drugs involved in the conspiracy: he helped transport one of the methamphetamine "eggs" from the storage locker to Bishop's house; he was present at the house when the drugs were being broken up and weighed; and he helped sell the drugs. Given his familiarity with Bishop's house, from which much of the drugs were sold, a jury could reasonably have found that he at least should have known the scope of the conspiracy. A jury likewise reasonably could have found that he also should have known that he was dependent on others in the conspiracy—for ex-

ample, those who originally purchased the drugs and those who transported the drugs from California to Montana.

■ Lanter was also clearly a part of the conspiracy. He purchased methamphetamine in California, helped Salazar sell that amount and more in Montana, and assisted Salazar when the latter needed money and a place to stay. These latter actions assured that he would have a way of getting drugs from California to Montana.

*Possession*

Printz and Lanter also claim on appeal that the evidence was insufficient to convict them of conspiracy to distribute and possession of methamphetamine with intent to distribute. Viewing the evidence in the light most favorable to the government, the evidence was sufficient for a reasonable jury to find the elements of the crime beyond a reasonable doubt.

■ While there is evidence that Printz helped pick up and sell some of the drugs, such direct evidence of possession by Printz and Lanter is not required for their conviction for possession with intent to distribute. "[A] co-conspirator is vicariously liable for reasonably foreseeable substantive crimes committed by a co-conspirator in furtherance of the conspiracy." *United States v. Fonseca–Caro,* 114 F.3d 906, 907 (9th Cir.1997) (citing *Pinkerton v. United States,* 328 U.S. 640, 647–48, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946)). "To establish *Pinkerton* liability, the prosecution must demonstrate '(1) the substantive offense was committed in furtherance of the conspiracy; (2) the offense fell within the scope of the unlawful project; and (3) the offense could reasonably have been foreseen as a necessary or natural consequence of the unlawful agreement.' " *Fonseca–Caro,* 114 F.3d at 908 (citation

omitted). The prosecution established all three elements; there was therefore sufficient evidence to convict Printz and Lanter of possession with intent to distribute.

### 4. Exclusion of Evidence and Severance Challenged by Martinez

#### A. Withdrawal

Martinez argues that his Count VI conviction, which was based on a *Pinkerton* theory of liability, *see Pinkerton v. United States,* 328 U.S. 640, 647–48, 66 S.Ct. 1180, 90 L.Ed. 1489 (U.S.1946), must be reversed because the district court abused its discretion when it excluded evidence of Martinez's alleged withdrawal from the conspiracy in April of 1996. We agree.

Martinez was convicted of Count I (conspiracy), 21 U.S.C. §§ 841(a)(1), 846, and 18 U.S.C. § 2, and Counts II and VI (use or possession of firearms in the course of a drug trafficking scheme), 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2. The Count II conviction "dealt with possession of a 9 millimeter handgun or a short-barreled shotgun with a pistol grip between May and July of 1995." Tr. at p.1904 (Government's closing argument). The Count VI conviction, by contrast, dealt with a .44 magnum revolver and a .25 caliber handgun "more directly related to the end of the conspiracy and the conduct in April of 1997." *Id.* The Count VI conviction, because it was a "second or subsequent" conviction under § 924(c), resulted in the imposition of a twenty-year sentence. *See* 18 U.S.C. § 924(c)(1)(C)(i) (1994).

#### The Excluded Evidence of Withdrawal

The excluded evidence at issue includes statements Martinez made on his own initiative to law enforcement in April of 1996 implicating two of his co-defendants and other unindicted co-conspirators in a meth-amphetamine trafficking scheme in Billings, Montana—statements which were later used to support a search warrant for unindicted co-conspirator Sherry Bishop's home, the execution of which produced enough evidence to bring this case to trial. Martinez has shown that Agent Lueck (the law enforcement agent who took Martinez's statement)[1] was available to testify that Martinez expected no favors in return for his information and that Martinez told him, among other things, that he wanted "to make a clean break."

#### District Court Proceedings

Before trial, Martinez moved to dismiss several of the charges against him on the ground that, as a matter of law, he had withdrawn from the conspiracy. In opposing the motion, the government stated:

> The defendant's motion and brief on this issue [withdrawal] seem to be a preview of defense counsel's closing argument at trial in the event he is successful in persuading this court to give an instruction on withdrawal....
>
> The factual assertions that defendant makes in his motion and brief are and will be in dispute at trial and that dispute will be most appropriately resolved by a jury after his trial. The defendant's motion for dismissal should therefore be denied.

The motion was denied, and the jury did receive an instruction on withdrawal: "You may consider any definite, positive step that shows that the conspirator is no longer a member of the conspiracy to be evidence of withdrawal."

Martinez next requested a severance, on the ground that the admission of his statements to law enforcement that tended to indicate withdrawal would present a *Bruton* problem for his co-defendants. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct.

---

1. Martinez was in state prison at the time.

1620, 20 L.Ed.2d 476 (1968) (admitting non-testifying defendant's confession that incriminates co-defendant violates co-defendant's confrontation rights and is prejudicial error). The court recognized the existence of the problem, suggesting partial severance. Martinez indicated that he felt additional counts were affected and should also be severed. The government then stated that it would be reluctant to agree to severance, and asked for an overnight recess to research the issue.

The next day the government argued (1) that the evidence should be excluded because irrelevant to the issue of withdrawal (based on the fact that Martinez apparently did not implicate himself and did not refer in his statement to a "conspiracy"), and (2) in the event the court found the evidence relevant (and therefore did not exclude it), that redaction of the co-defendants' names rather than severance was the appropriate solution. Martinez had objected to the redaction approach the day before, arguing that to redact the names of his co-defendants would weaken the impact of the evidence.

Just before the judge took a recess to decide the issue, he remarked: "[N]obody has mentioned the other partial solution of dismissing three counts that he's talking about, and that would have happened after the withdrawal, assuming there was a withdrawal. Then the statement wouldn't be relevant at all." The government responded by reiterating its relevance argument, and Martinez informed the court that "there may be two gun counts that may also be subject to the same withdrawal motion." The judge then recessed, and returned with the following ruling:

This motion is kind of coming in through the back door. Actually, it shouldn't really be Martinez's motion to make, but I'm going to treat it now as a motion in limine, and I am going to rule that the

statement is inadmissible. I'm going to exclude the statement on the grounds of irrelevance, confusing, and does not satisfy the elements of the claim of withdrawal. So you're not going to be able to use the statement.

*Discussion*

A trial court's decision to exclude evidence is reviewed for an abuse of discretion. *United States v. Williams,* 291 F.3d 1180, 1189 (9th Cir.2002). Under this standard of review, an appellate court should reverse if "it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached," *SEC v. Coldicutt,* 258 F.3d 939, 941 (9th Cir.2001), and the error more likely than not affected the verdict, *see United States v. Edwards,* 235 F.3d 1173, 1178 (9th Cir.2000). Because we find the district court's decision to exclude Martinez's evidence of withdrawal constituted a clear error of judgment, and because this error more likely than not affected the verdict on Count VI, we reverse.

■ The standard of relevance in the federal courts is quite liberal: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The question of whether Martinez had withdrawn from the conspiracy in April of 1996 was clearly an issue of consequence to the determination of the action—if he had, he could not be held liable for his co-conspirators' firearms violations in April of 1997. *See United States v. Lothian,* 976 F.2d 1257, 1262 (9th Cir. 1992) ("a defendant cannot be held liable for substantive offenses committed before joining or after withdrawing from a conspiracy"). The specific evidence that was excluded, moreover, had a substantial ten-

dency to make the fact of withdrawal more probable than it would be without it. "A conspirator can withdraw from a conspiracy by: (1) disavowing the unlawful goal of the conspiracy; (2) affirmatively acting to defeat the purpose of the conspiracy; or (3) taking definite, decisive, and positive steps to disassociate himself from the conspiracy." *United States v. Fox,* 189 F.3d 1115, 1118 (9th Cir.1999) (internal quotation marks omitted). Martinez's statements to law enforcement were later used to support a search warrant that led to the dismantling of the conspiracy. His motivation, according to law enforcement, was to "make a clean break." This evidence, at the very least, had a tendency to make it more probable than otherwise would be the case that Martinez "affirmatively [acted] to defeat the purpose of the conspiracy." *Id.* The district judge's decision to exclude this evidence on relevancy grounds, therefore, was clearly erroneous.

■ So, too, was the decision to exclude the evidence on the alternative ground of "confusion." Given the straightforward nature of the evidence, and its importance to Martinez's defense, to find its "probative value substantially outweighed by the danger of ... confusion of the issues" constitutes clear error. Fed.R.Evid. 403.[2]

■ We recognize that the district judge faced two equally undesirable choices—admit Martinez's statements to law enforcement and risk a possible mistrial on *Bruton* grounds, or order Martinez's case severed on the eve of trial. But however unsavory the choice, it had to be made. Because the exclusion ruling was clearly erroneous, and because this error more likely than not affected the verdict against Martinez on Count VI, we reverse

the conviction as to that count. This reversal requires resentencing on remand.

**B. Confrontation Rights**

■ Martinez also argues that the exclusion of evidence relating to his statements to law enforcement violated his confrontation rights under the Sixth Amendment of the United States Constitution, tainting the convictions on Counts I and II. Although his counsel cross-examined Sherry Bishop (one of the persons Martinez implicated in his April 1996 statement), Martinez claims that his inability to question her about her knowledge of his statements to law enforcement prevented him from adequately challenging her credibility.

In determining whether a district court, in excluding evidence, violated a defendant's Sixth Amendment right to confrontation, this court considers three factors: (1) "whether the excluded evidence is relevant"; (2) "[i]f the evidence is relevant, ... whether there were other legitimate interests outweighing a party's interest in presenting the evidence"; and (3) "whether the trial court's exclusion of evidence left the jury with sufficient information upon which to assess the credibility of witnesses." *United States v. James,* 139 F.3d 709, 713 (9th Cir.1998) (citation and internal quotation marks omitted). "When the trial court excludes evidence tending to impeach a witness, it has not abused its discretion as long as the jury has in its possession sufficient information to appraise the biases and motivations of the witness." *United States v. Kennedy,* 714 F.2d 968, 973 (9th Cir.1983).

Because the jury already had sufficient information upon which to assess Bishop's credibility (including Bishop's drug habits, her prior relationship with Martinez, and

---

**2.** The district judge's third ground—that the evidence "does not satisfy the elements of the

claim of withdrawal"—is not a permissible basis for exclusion. *See* Fed.R.Evid. 401.

her inconsistent statements to police), we hold that Martinez did not suffer a Sixth Amendment violation by the exclusion of his statements to law enforcement.

### C. Severance

Martinez's claim regarding severance is moot.

### 5. Exclusion of Evidence of Martinez's Statements to Law Enforcement Officials

■ Martinez claims that the government's failure to produce the letter he wrote to narcotics agents and the notes those agents took during or after the interview with him violates his right to confrontation. He also claims that the district court erred in denying his motion to dismiss on these grounds. The government's loss or destruction of the notes cannot be a violation of the Confrontation Clause, because it does not involve witnesses testifying against Martinez. To the extent that Martinez's claim has a constitutional basis, it is the Due Process Clause.

■ This court has set out a two-pronged test under the Due Process Clause for "cases of constitutionally guaranteed access to evidence, wherein the Government loses potentially exculpatory evidence." *United States v. Dring,* 930 F.2d 687, 693 (9th Cir.1991). Under this test, the burden is on the defendant to "make an initial showing that the Government acted in bad faith and that this conduct resulted in prejudice to the defendant's case." *Id.* Martinez has satisfied neither of these prongs. There is no evidence in the record showing that the notes and letter were lost or destroyed due to the government's bad faith. There is also no evidence in the record tending to show that the notes or letter were facially exculpatory.

### 6. Martinez's Sentence of Twenty Years for his Second Count of Conviction Under 18 U.S.C. § 924(c)

Because we reverse Martinez's conviction on Count VI, *see supra,* we need not address Martinez's argument that the sentence imposed for that conviction violates his due process rights under *United States v. Castaneda,* 9 F.3d 761 (9th Cir.1993), or that it constitutes cruel and unusual punishment.

### 7. Salazar–Lopez's Evidentiary Challenges

Salazar–Lopez challenges several evidentiary rulings on appeal.

### A. Hearsay Statements

First, Salazar–Lopez asserts that his confrontation rights were violated by the admission of hearsay statements of unindicted co-conspirator Carlos Marquez, as well as by what he claims to be *Bruton* testimony. Under Federal Rule of Evidence ("FRE") 801(d)(2)(E), hearsay statements may be admitted when they are "offered against a party" and are made by "a coconspirator of a party during the course and in furtherance of the conspiracy."

■ Marquez's statements were recounted by David Gil. Both Marquez and Gil appear to have been co-conspirators, as both were sources from whom Salazar–Lopez purchased methamphetamine in Turlock. It is of no consequence that they were not indicted, *see United States v. Everett,* 692 F.2d 596, 601 (9th Cir.1982), because the statements were clearly made during the course of the conspiracy. One of the statements, regarding Salazar–Lopez wiring money to Marquez through Western Union, was in furtherance of the conspiracy. The other statement, regarding Salazar–Lopez taking half of a certain

amount of drugs to Billings so that Gil could take the other half, is less clearly in furtherance of the conspiracy. However, "[e]vidence erroneously admitted in violation of the Confrontation Clause must be shown harmless beyond a reasonable doubt, with courts considering the importance of the evidence, whether the evidence was cumulative, the presence of corroborating evidence, and the overall strength of the prosecution's case." *United States v. Bowman*, 215 F.3d 951, 961 (9th Cir.2000) (citation omitted). Given the amount of evidence against Salazar–Lopez and the corroboration of the first statement, the admission of this statement, even if erroneous, did not constitute reversible error.

■ Salazar–Lopez also claims that statements made by Martinez and Lanter should be excluded under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). We have stated that in *Bruton*, "the Supreme Court held that admission at a joint trial of a co-defendant's confession implicating the defendant violated the defendant's sixth amendment right to confrontation. The inculpatory statements which form the basis of [appellant's] *Bruton* claim were not statements made in a confession, but were statements made by [a co-conspirator], in furtherance of a conspiracy." *United States v. McCown*, 711 F.2d 1441, 1448 (9th Cir. 1983). Under our holding in *McCown*, Salazar–Lopez's *Bruton* claim fails.

B. Federal Rule of Evidence 404(b) Evidence

■ Salazar–Lopez objects to the admission of testimony regarding an instance

in which Martinez threatened and hit a man.[3] This evidence is not, however, Federal Rule of Evidence ("FRE") 404(b) evidence, as Salazar–Lopez alleges. That rule makes evidence of "other crimes" admissible for purposes such as "proof of motive, opportunity, intent, preparation, [or] plan." FRE 404(b) does not apply when the "evidence concerning the other act and the evidence concerning the crime charged are 'inextricably intertwined.'" *United States v. Ripinsky*, 109 F.3d 1436, 1442 (9th Cir.1997) (citation omitted), *overruled on other grounds by United States v. Sablan*, 114 F.3d 913 (9th Cir.1997). The evidence regarding Martinez's mode of collecting on drug debts is "inextricably intertwined" with evidence regarding other parts of the conspiracy. Therefore it is admissible for all purposes.

■ Salazar–Lopez also claims that the district court erred by failing to grant his motion for a mistrial due to the failure of the government to give all Appellants notice of its intention to use FRE 404(b) evidence obtained from a search, executed pursuant to a warrant, of Salazar–Lopez's house in Turlock. The evidence on which Salazar–Lopez focuses is pieces of paper recovered at the house. These papers alone are not evidence of bad acts; therefore they do not fall within the scope of FRE 404(b). Consequently, even if notice was not properly given and the evidence was improperly admitted, it was not reversible error under FRE 404(b).

8. Enhancement of Salazar–Lopez's Base Offense Level for his Alleged Role as a Supervisor of the Conspiracy

■ The district court increased Salazar–Lopez's base offense level by four lev-

---

3. Salazar–Lopez claims on appeal that the district court erred by admitting evidence in violation of Federal Rules of Evidence ("FRE") 401, 402, 403, and 404(b). However, he elaborates only on the violation of FRE

404(b) and does not mention the other rules again. The relevance of FRE 401, 402, and 403 to Salazar–Lopez's argument is not immediately apparent, and we will not address the possible applicability of these rules.

els due to his role as an organizer or leader, under U.S.S.G. § 3B1.1. In order to be subjected to this offense level enhancement, a defendant "need only [have] exercise[d] authority over one and not all of the other participants in order to merit the adjustment." *United States v. Camper*, 66 F.3d 229, 231 (9th Cir.1995).

The district court did not err in enhancing Salazar–Lopez's base offense level under U.S.S.G. § 3B1.1, because evidence in the record establishes that Salazar–Lopez wielded a high degree of authority in the conspiracy. For example, he discussed with Lira the viability of setting up a drug operation in Billings; he set the terms of a deal with Lira; and he introduced Lanter to his connection.

9. Denial of Downward Departure for Salazar–Lopez on Grounds of Alien Status, and his Request for a Recommendation to the Bureau of Prisons that he be Incarcerated in Mexico

■ This court may not review a district court's discretionary denial of a downward departure. *United States v. Wetchie*, 207 F.3d 632, 636 (9th Cir.2000). The district court did not indicate that it lacked discretion to depart; only if it had so indicated would this decision be reviewable. *United States v. Davoudi*, 172 F.3d 1130, 1133 (9th Cir.1999).

■ Appellant Salazar–Lopez requested that the district court recommend to the Bureau of Prisons that he serve his sentence in Mexico. The district court does not have jurisdiction to decide the location of a defendant's incarceration; authority over that decision is held by the executive branch. *United States v. Dragna*, 746 F.2d 457, 458 (9th Cir.1984). Therefore the district court's denial of the request to recommend was not error.

10. Lanter's Consecutive, Rather than Concurrent, Sentences

■ The district court has discretion to impose concurrent or consecutive sentences. *United States v. Otis*, 127 F.3d 829, 834 (9th Cir.1997); *see also* 18 U.S.C. § 3584(a); U.S.S.G. § 5G1.3(c).

The current version of U.S.S.G. § 5G1.3(c), which was in effect at the time of Lanter's sentencing, and its application notes leave to the district court's discretion the choice between concurrent and consecutive sentences. Under 18 U.S.C. § 3584, the district court must consider the factors set out in 18 U.S.C. § 3553(a) when deciding between consecutive and concurrent sentences. Section 3553(a) states that

[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider-

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for-

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code;

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Lanter is serving consecutive sentences of 318 months and 660 months, which, given his age, is the practical equivalent of a life sentence. Ordering these sentences to be served consecutively may be "greater than necessary ... to comply with the purposes" of 18 U.S.C. § 3553(a)(2).

The district court's decision is reversible only if we find an abuse of discretion. However, the district court must have stated its reasons for imposing the sentences consecutively. It is not clear from the record whether the district court considered the factors listed in 18 U.S.C. § 3553(a). *See United States v. Luna–Madellaga,* 133 F.3d 1293, 1294 (9th Cir. 1998) (stating that a sentencing court, in determining whether to give concurrent, partially concurrent, or consecutive sentences, "is to consider" the factors set out

in 18 U.S.C. § 3553(a) as well as those listed in U.S.S.G. § 5G1.3, application note 3). Because the district court failed to show that it considered these factors, and because the aggregate sentence may be greater than necessary to comply with the purposes of § 3553(a)(2), we reverse and remand for resentencing.

11. *Apprendi* Errors

■■■ The Appellants all filed supplemental briefs arguing that the district court erred at sentencing in attributing to them drug quantities that were not found by the jury beyond a reasonable doubt, in violation of the rule set forth in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ("[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"). *Apprendi* was decided after the Appellants were sentenced by the district court, and Appellants did not raise these objections to their sentences below. We therefore review for plain error. *See* Fed.R.Crim.P. 52(b). To secure reversal under this standard, Appellants must prove that: (1) there was "error"; (2) the error was "plain"; and (3) that the error affected "substantial rights." *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). If these conditions are met, we may exercise our discretion to "notice a forfeited error" only if the error (4) "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

Because the jury found beyond a reasonable doubt only that Appellants had conspired to possess and possessed with intent to distribute a "measurable amount" of methamphetamine, the statutory maximum is 20 years (240 months). 21 U.S.C.

§ 841(b)(1)(C). Appellants James, Pimentel–Tafolla, and Springfield were each sentenced to less than 240 months, and thus there was no *Apprendi* error in their sentencing. However, Appellants Salazar–Lopez, Printz, Lanter and Martinez each received sentences of greater than 240 months, and the district court therefore erred in sentencing these four Appellants. In light of *Apprendi,* that error is now plain. *See Johnson v. United States,* 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) ("[W]here the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be 'plain' at the time of appellate consideration").

Nonetheless, under the fourth step in the plain error analysis, we decline to notice the forfeited error, for "[e]ven assuming [these four Appellants'] substantial rights were affected, the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States v. Cotton,* 535 U.S. 625, 122 S.Ct. 1781, 1786, 152 L.Ed.2d 860 (2002). In *Johnson v. United States,* 520 U.S. 461, 470, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), the Supreme Court held, under the fourth step, that a failure to submit an element of the crime to the jury for decision did not require reversal because the evidence of that element introduced at trial was "overwhelming" and "essentially uncontroverted." In *Cotton,* the Supreme Court applied the *Johnson* analysis to an error under *Apprendi* in which neither the grand nor petit jury had determined the actual quantity of drugs. The precise question answered in *Cotton* was whether the grand jury, rather than the petit jury, should have been asked to determine whether the quantity of drugs exceeded 50 grams. But it is clear that *Cotton* applies to a failure to submit the quantity of drugs to the petit jury as well as to the grand jury, for *Johnson,* the foundation case for

*Cotton,* involved a failure to submit an element of the crime to the petit jury.

In this case, the evidence that the conspiracy involved large quantities of drugs "was overwhelming and essentially uncontroverted." *Cotton,* 122 S.Ct. at 1786 (internal quotation marks omitted). All of the evidence implicating Appellants in the drug conspiracy revealed that several pounds of methamphetamine were involved. The very nature of the conspiracy was to transport multiple pounds of the drug and then to break down and weigh the pieces. "Surely the [petit] jury, having found that the conspiracy existed, would have also found that the conspiracy involved at least [ten] grams of [methamphetamine]." *Id. See also* 21 U.S.C. § 841(b)(1)(B)(viii). Under *Cotton,* because the government introduced overwhelming proof of the fact that supported the enhanced sentences, the *Apprendi* error here does not require reversal. *Id.*

12. **Calculation of Drug Weights to be Attributed to Appellants Springfield, James, and Printz**

Appellants Springfield, James, and Printz also argue that the district court erred in calculating the drug weights attributable to them for purposes of sentencing. We review a district court's factual determination as to the drug quantity attributable to a defendant for clear error. *See United States v. Palafox–Mazon,* 198 F.3d 1182 (9th Cir.2000).

Appellants may properly be held accountable for all quantities of drugs with which they were directly involved, and all reasonably foreseeable quantities that were within the scope of the criminal conspiracy. *See* U.S.S.G. § 1B1.3 (relevant conduct). Moreover, "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying

the acquitted charge." *See United States v. Watts,* 519 U.S. 148, 157, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). Generally, the court must only find that the defendant engaged in the criminal conduct by a preponderance of the evidence; where, however, "a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction," a clear and convincing standard may be required. *See United States v. Valensia,* 222 F.3d 1173, 1178–79 (9th Cir.2000).

The district court found, by clear and convincing evidence, that Springfield and James were accountable for nine pounds of methamphetamine, and that Printz was accountable for ten pounds of methamphetamine. The district court's findings are not clearly erroneous.

■ The evidence showed that the Appellants were directly involved with the March 1997 shipment of methamphetamine. Bishop testified that Printz knowingly assisted in the transportation of the March shipment, and that Springfield and James thereafter assisted in breaking the drugs down for distribution. The DEA forensic chemist testified that any evaporation would have occurred *after* the drugs were exposed to air during breakdown. Because each of the three Appellants dealt with the drugs before or at the time they were broken down, each was properly held accountable for the full, pre-evaporation, quantity.

Bishop's testimony also reveals that Printz, Springfield, and James remained involved in the drug conspiracy during April 1997, and that—given their knowledge of the large quantity of drugs at play in the conspiracy—they could have reasonably foreseen the methamphetamine referenced in Counts IV and V. We reject the Appellants' invitation to second guess the district court's determination of Bishop's credibility.

AFFIRMED in part, REVERSED and REMANDED in part.